# Hogg *et al. versus* Ashman *et al.*

1. Under the Act of April 22d 1856 (Limitations of Actions), which repeals sect. 4 of Act of March 26th 1785, a person under coverture must make entry or bring suit to recover lands within thirty years after her right of entry accrues, notwithstanding her coverture.

2. Under the Act of 1856, the statute runs against persons under disability as in other cases, and bars their claims after thirty years from the time when their right of entry accrues.

3. Parties claiming title under Mary Rogers brought ejectment in 1872 to recover certain land devised to her in 1818; as early as 1836 the defendants had been in possession of the land in dispute; Mrs. Rogers died in 1852 and her husband in 1872: *Held*, that the Act of April 22d 1856 was a bar to the action.

November 13th 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1876, No. 281.

Ejectment by Catharine I. Ashman and others, against John T. and George E. Hogg, for a narrow strip of land containing about eight acres. The action was begun December 21st 1872.

Isaac Meason, the elder, who died in 1818, by his will directed a

[Hogg *v.* Ashman.]

certain farm to be divided "by running a straight line from the river (the Youghiogheny) throughout to the back line on the hill, so as to divide the tract into two equal parts, as nearly as may be," and gave one part to his son Isaac and the other to his daughter Mary Rogers. Immediately after his death, the devisees took possession of their respective parts of the farm. The share of Isaac Meason, Jr., was sold by the sheriff in 1835 and became afterwards vested in the defendants. The plaintiffs claimed under Mrs. Rogers. Mrs. Rogers died in 1852; her husband died September 18th 1872. The existing line between the two properties when this action was brought was marked by a fence built in 1836. There was conflicting evidence as to whether the line had ever been actually settled by agreement between the devisees of the two tracts under Meason's will. The plaintiffs below sought to establish a new line which would increase the size of their share, and for that purpose brought this action.

The court (Stowe, A. J.) charged that if the existing line had been actually agreed upon between the respective parties as the line of their properties, the verdict should be for the defendants; if, however, they should not find so, they should find for the plaintiffs, as the line which the plaintiffs sought to establish was the line intended by Isaac Meason's will, and the one which might have been originally claimed under the will, had the devisees thereunder so chosen at that time.

Verdict for the plaintiffs and judgment. The defendants below then took this writ of error.

*D. Kaine*, *W. Parshall* and *G. W. K. Minor*, for the plaintiffs in error.

*C. E. Boyle* and *E. Campbell*, for the defendants in error.

Mr. Justice Gordon delivered the opinion of the court, January 2d 1877.

The case of Hunt *v.* Wall, 25 P. F. Smith 413, governs the case now in hand. The land in controversy was devised by Col. Isaac Meason to his daughter Mary, wife of Daniel Rogers. Meason died January 23d 1818; title to the premises then vested in Mrs. Rogers and her right of entry accrued at that time. She was then under the disability of coverture. She died November 3d 1852, and her husband, Daniel, September 18th 1872. But for the Act of 1856 her heirs would have had ten years after the death of her husband within which to bring suit for the recovery of the premises: Marple *v.* Myers, 2 Jones 122. But this act repeals the 4th sect. of the Act of 1785, by which the Statute of Limitations was suspended as to persons under disability, and now that statute runs as in other cases from the time the right of entry accrues, the

only difference, in favor of such persons, being that they may make entry or bring suit at any time within thirty years, whereas in ordinary cases the limit is twenty-one years. If then the entry of Isaac Meason, Jr., under whom the defendants claim, was made in the lifetime of Mrs. Rogers, under a claim adverse to her title and the seisin of her husband, who was tenant by the curtesy, the statute began to run from the date of such entry, and an adverse possession for thirty years from that time would finally and conclusively bar the right of entry of both husband and wife, and of all claiming under them. A very different case would be presented had Isaac Meason, Jr., claimed to hold under conveyance from the husband; for then he would hold by virtue of the husband's estate as tenant by the curtesy and his right to the seisin of the freehold during life; hence, until the husband's death, the possession would not be adverse, but in subordination to the wife's title.

Such was the case of Ege *v.* Medlar, 1 Norris 86. The creditors of George Ege had seised upon and sold his right in the tract of land in controversy, the title to which was in his wife. Her title originated in 1815. Judgment was had against George Ege in 1820, upon which the land was sold in 1838. Mrs. Ege died in December 1848, and her husband in February 1858. Now, if George Ege had, at the time of the sheriff's sale, any interest in his wife's land, that interest passed to the sheriff's vendees, and they could hold until that interest was divested by Ege's death. When, in treating of that case, we demonstrated that he had curtesy in his wife's land, we thought we had shown all that was necessary to prove that the Statute of Limitations could not begin to run against her heirs until the determination of the curtesy estate. But that we did not make ourselves clear seems to be obvious from the fact that this case is now cited as containing a doctrine contrary to that found in Hunt *v.* Wall. A little further explanation will show that there is no resemblance between the two cases. At common law the husband, before issue born, was entitled to the seisin only of his wife's land, and if there was no issue such right terminated upon her death. Still his right was one fixed and vested in himself, for we find in case of his attainder, there was a forfeiture of such seisin, and consequently of the pernancy of the profits during coverture: 2 Bl. Com. 433. But, after issue born, he became tenant by the curtesy initiate, and ·thus had vested in him, not only the seisin, but also the freehold for life by a sort of remitter. In Pennsylvania, curtesy is not dependent upon the birth of issue, but upon the marriage alone; hence, though this estate be not fully consummate until the death of the wife, yet it is such an one as he may sell or charge with his debts: Lancaster Bank *v.* Stauffer, 10 Barr 398; Beard *v.* Deitz, 1 Watts 309. It will be seen, therefore, that the vendees of the sheriff, taking, as they did, George Ege's title, became tenants of the property during his

[Hogg v. Ashman.]

life, and that, from the very nature of the estate, they did not and could not hold adversely to the remaindermen, heirs of Elizabeth Ege, neither could these heirs have their writ of ejectment until his death, for, as against his vendees, they had neither title nor right of entry. To make this case like the one in hand, we must suppose that the defendants entered in the lifetime of Mrs. Ege, under a claim not only adverse to her right, but also to that of her husband. In such case, the owners of the fee might at any time within thirty years have recovered the possession by an action at law or by entry; as it was, this could not be, for the defendants held George Ege's life estate, and hence could not be disturbed until his death.

Judgment reversed, and a *venire facias de novo* awarded.